UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

THE REV. DR. MICHAEL A. NEWDOW, IN PRO PER,

    Plaintiff,

v.

THE CONGRESS OF THE UNITED STATES OF AMERICA, et al.,

    Defendants.

NO. CIV. S-05-2339 FCD PAN

----oo0oo----

This matter is before the court on defendants' motions to dismiss.[1]  Plaintiff, the Rev. Dr. Michael A. Newdow, opposes the motions.  For the reasons set forth below,[2] defendants' motions to dismiss are GRANTED.

---

[1] Federal government defendants and defendant Pacific Justice Institute ("PJI") filed separate motions to dismiss.

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

**BACKGROUND**

On November 18, 2005, plaintiff filed a complaint in this court, seeking declaratory and injunctive relief regarding the use of the phrase "In God We Trust" as the national motto and its inscription on United States coins and currency. (Compl., filed Nov. 18, 2005). The complaint names as defendants the Congress of the United States of America, Peter Lefevre as Law Revision Counsel, the United States of America, John William Snow as Secretary of the Treasury, Henrietta Holsman Fore as Director of the United States Mint, and Thomas A. Ferguson as Director of the Bureau of Engraving and Printing. (1st Am. Compl. ("FAC"), filed May 10, 2006, ¶¶ 8-13). On January 29, 2005, the court granted Pacific Justice Institute's ("PJI") motion to intervene as a defendant in the action. In this litigation, plaintiff seeks to scrub out the reference to "God" in the motto of the nation.

Plaintiff Michael A. Newdow "is an ordained minister and the founder of the Atheistic church, the First Amendmist Church of True Science ("FACTS")." (Id. ¶ 7). Plaintiff "is an Atheist whose religious beliefs are specifically and explicitly based on the idea that there is no god." (Id. ¶ 157). His church, FACTS, "holds as a fundamental truth that there is no god or supernatural being." (Id. ¶ 161). Plaintiff alleges that "he finds it deeply offensive to have his government and its agents advocating for a religious view he specifically decries." (Id. ¶ 157). In particular, plaintiff takes issue with the legislation set forth in 36 U.S.C. § 302,[3] which provides that "In God We

---

[3] This legislation was enacted in 1956, and is referred to by plaintiff as the "Act of 1956." (FAC ¶ 138).

Trust" is the national motto, and in 31 U.S.C. §§ 5112 and 5114,[4] which provide that United States coins and currency shall have the inscription "In God We Trust." (Id. ¶¶ 177, 179).

Plaintiff asserts that, as a result, defendants have violated his rights under the Establishment Clause, the Free Exercise Clause, the Religious Freedom Restoration Act ("RFRA"), the Equal Protection Clause, and the Free Speech Clause.[5] Defendants move to dismiss plaintiff's claims on the grounds of (1) lack of standing; (2) immunity; and (3) failure to state a claim upon which relief can be granted.

**STANDARD**

A complaint will not be dismissed under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his [or her] claim that would entitle him [or her] to relief." Yamaguchi v. Dep't of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997)(quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

Given that the complaint is construed favorably to the pleader, the court may not dismiss the complaint for failure to

---

[4] This legislation was enacted in 1955 and is referred to by plaintiff as the "Act of 1955." (FAC ¶ 115).

[5] In his opposition, plaintiff does not address defendants' motions to dismiss his claims under the Equal Protection Clause and the Free Speech Clause or the arguments in support thereof. The court interprets plaintiff's silence as a non-opposition to defendants' motions on these claims. Therefore, defendants' motions to dismiss plaintiff's Equal Protection and Free Speech claims are GRANTED.

state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

**ANALYSIS**

**I.  Standing**

The issue of standing is a threshold determination of "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975); Steel Co. v. Citizens For A Better Env't, 523 U.S. 83 (1998). "The judicial power of the United States defined by Art[icle] III is not an unconditioned authority to determine the constitutionality of legislative or executive acts." Valley Forge Christian Coll. v. Americans United For Separation of Church and State, Inc., 454 U.S. 464, 471 (1982). Rather, Article III limits "the federal judicial power 'to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through the judicial process.'" Id. at

472 (quoting Flast v. Cohen, 392 U.S. 83, 97 (1968)); Steele, 523 U.S. at 102.  "Those who do not possess Article III standing may not litigate as suitors in the Courts of the United States."  Id. at 476.

The Supreme Court has set forth that "[t]he 'irreducible constitutional minimum of standing' contains three requirements." Steele, 523 U.S. at 102-03 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).  First, plaintiff must allege an "injury in fact – a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural, or hypothetical."  Id. at 103 (internal quotations and citations omitted).  "[W]here large numbers of Americans suffer alike, the political process, rather than the judicial process, may provide the more appropriate remedy for a widely shared grievance."  FEC v. Akins, 524 U.S. 11, 23 (1998).  However, it is possible for a plaintiff to allege an injury that, although shared by many, is particularized and concrete.  Id. at 24.  Second, plaintiff must allege causation – "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant."  Steele, 523 U.S. at 103. (citing Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976).  The injury must not be the result of some third party not before the court. Lujan, 504 U.S. at 560 (citing Simon, 426 U.S. at 41-42).  Third, the injury must be redressable – there must be "a likelihood that the requested relief will redress the alleged injury.  Steele, 523 U.S. at 103 (citing Simon, 426 U.S. at 45-46).  Defendants argue that plaintiff fails each of these three standing requirements.

Plaintiff alleges a multitude of injuries caused by his encounters with the national motto. He asserts that, as an Atheist, he is a member of a "small minority" (according to plaintiff, 5% of all Americans). (FAC, App. K, at 5). Plaintiff argues that, as a member of such a minority, he is affected by the national motto in a different and more particularized manner than the majority. Generally, he contends that he is deeply offended "to have his government and its agents advocating for a religious view" and that he suffers injury "when his government and its agents . . . engage in such advocacy." (FAC ¶¶ 157-58).

Specifically, plaintiff asserts that he has been personally injured by the national motto and its inscription on coins and currency because: (1) the national motto degrades him and other Atheists from the "equal rank" of citizens and turns Atheists into "political outsiders" (FAC ¶ 178); (2) he was recently denied a job because of the mis-perception of his activism and because of the government's endorsement that "belief in God is 'good' and disbelief in God is 'bad'" – a notion reinforced by the national motto (Id. ¶¶ 188, 190); (3) he has given up hope of attaining elective office because of the anti-Atheistic bias that the government has perpetuated by the national motto (Id. ¶ 214); (4) he is repeatedly forced to confront a "religious belief" (the national motto) which he finds offensive both when he inspects coins during his normal purchasing activities and when he inspects his coin collection[6] (Id. ¶¶ 223-24); (5) he has been and is forced to "proselytize" and "evangelize" on behalf of

---

[6] The court finds it ironic that plaintiff collects and inspects that which he finds so offensive.

6

monotheism when he spends coins and currency (Id. ¶¶ 230, 261-62); (6) he was and is not able to raise funds for his ministry because of the offensive religious dogma on "the nation's monetary instruments" (Id. ¶¶ 240-41); (7) religious garb worn during FACTS church services and "FACTS libation – known as 'The Freethink Drink'" – cannot be purchased at times because of the offensive "religious dogma" on coins and currency (Id. ¶ 247-48); and (8) FACTS-related "research trips" have been cancelled due to the need to use United States currency to pay for such trips (Id. ¶¶ 252-54, 257).

Plaintiff alleges that all of the above described injuries were caused by the government defendants named in this action. The court finds that this is not the case. Some of the injuries alleged by plaintiff are not fairly traceable to defendants, but rather to third parties not before this court. For example, plaintiff alleges that he was denied employment because of mis-perceptions of his Atheistic activism and because of the governmental endorsement, reinforced by the national motto, that "belief in God is 'good' and disbelief in God is 'bad.'"[7] In other words, plaintiff argues that the national motto reinforces

---

[7] Plaintiff's allegations involving the refusal to be hired, the relinquishment of plaintiff's aspirations to hold elected office, derogatory remarks based upon plaintiff's Atheism, and a social environment where prejudice is perpetuated against Atheists share the same causation deficiencies.

Additionally, plaintiff has attached considerable documentation to his complaint, and, in his opposition, engages in extensive discussion of personal experiences and encounters to demonstrate that American culture and the national motto are often identified with belief in Christianity or monotheism. However, this documentation and discussion is wholly irrelevant to the claims against *these defendants* because plaintiff does not allege the requisite causal connection.

7

social bias against Atheism, which in turn, creates antagonism against his perceived activism. According to plaintiff, this antagonism caused a potential employer not to hire him as a result of his activism. The causal link between the national motto and plaintiff's alleged loss of employment opportunity appears to be the result of a personal fixation derived from plaintiff's ardent beliefs, but hardly meets the requirements of Article III standing. See Simon, 426 U.S. at 41-43 (holding that causation requirement was not met where plaintiffs asserted that the challenged federal regulations "encouraged" the actions of private entities that resulted in the injury complained of).

To the extent that plaintiff's injuries are traceable to defendants, such alleged injuries seem to stem from the perceived rank offensiveness of the national motto, itself. For example, plaintiff asserts that because of the offensive nature of the motto, he is unable to, *inter alia*, raise funds for his ministry, buy "libations" and "religious garb," and take "research trips."

Generally, a plaintiff does not sufficiently allege injury-in-fact for the purposes of Article III standing where the only harm is psychological injury "produced by observation of conduct with which one disagrees." See Valley Forge, 454 U.S. at 485. In Valley Forge, plaintiffs brought suit based upon the conveyance of government land in Pennsylvania to a non-profit educational institution operating under the supervision of a religious order. Valley Forge, 454 U.S. at 468. Plaintiffs, who resided in Maryland and Virginia and had their organizational headquarters in Washington, D.C., learned about the transfer through a news release. Id. at 486-87. The Supreme Court held

that the injuries alleged amounted to generalized grievances about the conduct of government, which do not satisfy the requirements of Article III.

However, federal courts addressing allegations of Establishment Clause violations after <u>Valley Forge</u> have recognized that the concept of injury in these types of cases is particularly elusive because the Establishment Clause plaintiff is not likely to suffer physical injury or pecuniary loss. See <u>Surhe v. Haywood County</u>, 131 F.3d 1083, 1086 (4th Cir. 1997); <u>Washegesic v. Bloomingdale Pub. Sch.</u>, 33 F.3d 679, 682 (6th Cir. 1994); <u>Saladin v. City of Milledgeville</u>, 812 F.2d 687, 691 (11th Cir. 1987); <u>Newdow v. Bush</u>, 355 F. Supp. 2d 265, 277-78 (D.D.C. 2005). Therefore, various Circuits have found sufficient injury-in-fact based upon the observation of offensive religious materials where plaintiffs have alleged a "personal connection" with the challenged conduct. See <u>Newdow</u>, 355 F. Supp. 2d at 278 (citing <u>Suhre</u>, 131 F.3d at 1087 (county resident had standing to challenge Ten Commandment display in county courthouse); <u>Washegesic</u>, 33 F.3d at 681-83 (former student had standing to challenge religious portrait displayed at public school); <u>Saladin</u>, 812 F.2d at 692-93 (residents in and around city had standing to challenge religious symbols on city seal)). Such cases distinguish the Supreme Court's rejection of plaintiffs' psychological injuries in <u>Valley Forge</u> on the basis of the proximity of the plaintiffs to the conduct they challenged, examining circumstances such as the frequent contact between the plaintiff and the offensive conduct or display. <u>Newdow</u>, 355 F. Supp. 2d at 278 n.11 (citing, <u>Suhre</u>, 131 F.3d at 1090).

In this case, plaintiff has alleged that he is deeply offended by the national motto, "In God We Trust," and the inscription of that motto on national coinage and currency. Because of the ubiquity of coins and currency in everyday life, plaintiff is necessarily and continuously confronted with the alleged endorsement of religion by the federal government. Further, plaintiff alleges that, as a member of a small minority of Americans, he is particularly affected by the use of "In God We Trust" as the national motto inscribed on coins and currency. Therefore, to the extent that plaintiff's injuries are purely psychological in nature, such confrontation with the national motto on coins and currency demonstrates a personal connection sufficient to establish Article III standing.

Finally, plaintiff alleges that his injuries are redressable by the court. Plaintiff seeks both declaratory and injunctive relief. As to declaratory relief, plaintiff requests the court to declare (1) that Congress violated the Establishment Clause and the Free Exercise Clause in passing the Acts of 1955 and 1956;[8] (2) that the inscription "In God We Trust" on coins and currency violates the Establishment Clause, the Free Exercise Clause, and RFRA; and (3) that the national motto violates the Establishment Clause, the Free Exercise Clause, and RFRA. Defendants argue that the relief requested by plaintiff would not meaningfully redress plaintiff's alleged injuries. In their opposition, defendants address only plaintiff's requests for injunctive relief, *not* his requests for declaratory relief.

---

[8] The court addresses the jurisdictional problems with plaintiff's claims against the Legislative Branch defendants, *infra*, in Section II.

The Supreme Court instructs that declaratory relief can usually provide a preferable alternative remedy to injunctive relief in cases such as this. Wooley v. Maynard, 430 U.S. 705, 711 (1977). "[A] district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary." Id. (internal quotations omitted). A judicial declaration that the national motto is unconstitutional because it violates the First Amendment would redress plaintiff's claimed injury that the national motto offends him as an Atheist. As such, and for the reasons set forth below, the court does not reach the issues of whether the injunctive relief requested by plaintiff could be ordered by this court or whether such injunctive relief would adequately redress his injuries.

Because plaintiff has alleged injury-in-fact, causation, and redressability, plaintiff has sufficiently alleged standing in the current litigation.[9]

**II. Immunity**

Defendants argue that the Legislative Branch defendants, namely Congress and the Law Revision Counsel, must be dismissed because these defendants are entitled to immunity. The Speech and Debate Clause of Article I of the Constitution provides that "[t]he Senators and Representatives . . . shall not be questioned in any other Place" for "any Speech or Debate in either House." U.S. Const. Art. I, § 6, cl. 1. The Supreme Court has interpreted the scope of the Speech and Debate Clause broadly to

---

[9] Plaintiff also alleges that he has taxpayer standing. Because the court has determined that plaintiff has sufficiently alleged citizen standing, the court does not reach this issue.

11

effectuate its purpose of protecting "the integrity of the legislative process by insuring the independence of individual legislators." Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501 (1975). In Eastland, the Court held that in determining whether the acts of members of Congress are protected by immunity, the court looks solely to whether or not the conduct falls within the "sphere of legitimate legislative activity." Id. If the conduct falls within this sphere, Congress is absolutely immune from being "questioned in any other Place." Id. Further, the Clause applies equally to officers and other employees of the Congress when they are engaged in legislative activity. See, e.g., id., Gravel v. United States, 408 U.S. 606, 618 (1972).

In determining whether conduct falls within the "sphere of legitimate legislative activity," the court "must determine whether the activities are 'an integral part of the deliberative and communicative processes by which Members participate in . . . proceedings with respect to the consideration and passage . . . of proposed legislation.'" Eastland, 421 U.S. at 504 (quoting Gravel, 408 U.S. at 625). In this case, plaintiff brings suit against Congress for the adoption of legislation that he alleges violates the Constitution and federal statutes. Plaintiff also brings suit against the Law Revision Counsel for preparing and publishing the United States Code which includes such legislation.

Plaintiff argues that defendants are not immune from plaintiff's claims because "performing a clearly unconstitutional act cannot, in any way, be considered part of the legislative

process." (Opp'n at 42). This argument runs counter to the Supreme Court's broad interpretation of Congress' immunity under the Clause. "If the mere allegation that a valid legislative act was undertaken for an unworthy purpose would lift the protection of the Clause, then the Clause simply would not provide the protection historically undergirding it." Eastland, 421 U.S. at 508-09; see also Newdow v. U.S. Congress, 328 F.3d 466, 484 (9th Cir. 2003), rev'd on other grounds sub nom., Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1 (2004).

The enactment of legislation and its subsequent publication is squarely within the sphere of legitimate legislative activity because plaintiff seeks to sue Congress for enacting laws and Law Revisions Counsel for accurately publishing those laws. Therefore, the Legislative Branch defendants are entitled to Speech and Debate Clause immunity and accordingly, plaintiff's claims against these defendants are DISMISSED.[10]

**III. Establishment Clause**

Plaintiff claims that the national motto violates the Establishment Clause of the First Amendment. The Ninth Circuit explicitly addressed this issue in Aronow v. United States, 432 F.2d 242 (9th Cir. 1970). In Aronow, the court held that

> [i]t is quite obvious that the national motto and the slogan on coinage and currency "In God We Trust" has nothing whatsoever to do with the establishment of religion. Its use is of a patriotic or ceremonial character and bears no true resemblance to a governmental sponsorship of a religious exercise.

---

[10] Because the Legislative Branch defendants are dismissed based upon Speech and Debate Clause immunity, the court need not reach the issue of sovereign immunity.

13

Id. at 243. The court could not easily discern "any religious significance attendant the payment of a bill with coin or currency on which has been imprinted 'In God We Trust' or the study of a government publication or document bearing that slogan."[11] Id. The Ninth Circuit further explained that "the motto has no theological or ritualistic impact," but rather, as stated by Congress, "has 'spiritual and psychological value' and 'inspirational quality.'" Id. at 243-44. Therefore, the Ninth Circuit held that the national motto "In God We Trust" and its printing on coins and currency does not violate the Establishment Clause. Id. at 242-44.

Plaintiff concedes that the Ninth Circuit's decision in Aronow is directly on point and is binding precedent on this court. However, plaintiff contends that Aronow is "wrongly decided." "Wrongly decided" or not, this court must and does, here, follow Ninth Circuit precedent. See United States v. Johnson, 256 F.3d 895, 916 (9th Cir. 2001) (holding that where "a majority of the panel has focused on the legal issue presented by the case before it and made a deliberate decision to resolve the issue, that ruling . . . can only be overturned by an en banc court or by the Supreme Court"). Therefore, defendants' motions to dismiss plaintiff's Establishment Clause claim are GRANTED.

**IV. Free Exercise Clause and Religious Freedom Restoration Act**

Plaintiff also asserts that the national motto and its printing on coins and currency violates his rights under the Free Exercise Clause of the First Amendment and under the Religious

---

[11] Further, the court noted that "such secular uses of the motto was viewed as sacrilegious and irreverent by President Theodore Roosevelt." Id.

Freedom Restoration Act ("RFRA"). Plaintiff alleges that the inscription of the words "In God We Trust" on money repeatedly forces him to confront a religious belief he finds offensive and which substantially burdens his right to exercise his Atheistic beliefs. (FAC ¶ 223). Plaintiff also asserts that he is effectively compelled to carry "religious dogma" on his person and to proselytize on behalf of the purely religious claim, "In God We Trust," when exchanging currency for goods. (Id. ¶¶ 230-31). As a result, plaintiff asserts, *inter alia*, that he cannot raise money in his church meetings and at times, cannot purchase religious garb, nor "formulate" "the FACTS libations . . . in its recommended manner." (Id. ¶¶ 239, 241, 247-48).

Essentially, plaintiff claims that the alleged governmental endorsement of monotheism on coins and currency burdens his right to exercise his Atheistic beliefs. Government attempts to disfavor a religion are generally analyzed under the Free Exercise Clause, while allegations of governmental efforts to benefit religion are generally addressed under the Establishment Clause. Harper v. Poway Unified Sch. Dist., 445 F.3d 1166, 1190 (9th Cir. 2006); Church of Lukumi Babalu Aye, Inc. v. City of Hialeh, 508 U.S. 520, 531 (1993). Here, the gravamen of plaintiff's alleged injuries stem from the government's "endorsement" of monotheism, not the government's "disfavor" of Atheism. Therefore, plaintiff's Free Exercise and RFRA claims appear to simply restate his Establishment Clause claim in an effort to elude Ninth Circuit binding precedent. However, in the interest of completeness, the court briefly addresses plaintiff's

claims that the national motto "substantially burdens" the exercise of his religion.

As stated above, the Ninth Circuit in <u>Aronow</u> held that the national motto is excluded from First Amendment significance because the motto "has no theological or ritualistic impact" and is of a purely secular, "patriotic," and "ceremonial character." 432 F.2d at 243-44. The court also stated that the purpose of the national motto is not to use the State's coercive power to aid religion, "either in Congressional intent or practical impact on society." <u>Id.</u> at 244 (citing <u>McGowan v. Maryland</u>, 366 U.S. 420 (1961)). Therefore, despite plaintiff's strenuous protestations of errancy, Ninth Circuit authority has found the national motto "In God We Trust" to be secular in nature and use. <u>Id.</u>

> The law is clear [] that governmental programs that "may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" do not infringe on free exercise rights protected by the First Amendment (and therefore RFRA).

<u>Newdow v. Bush</u>, 355 F. Supp. 2d at 290 (quoting <u>Lyng v. Northwest Indian Cemetary Protective Ass'n</u>, 485 U.S. 439, 450-51 (1988)). In light of <u>Aronow</u>, plaintiff's use of currency does not, as a matter of law, demonstrate government coercion to proselytize or evangelize on behalf of monotheism.

Undaunted by Circuit authority, plaintiff argues that the Supreme Court's decision in <u>Wooley v. Maynard</u> supports his Free Exercise claim. 430 U.S. 705 (1977). In <u>Wooley</u>, the Court held that the State of New Hampshire could not require citizens to display the state motto, "Live Free or Die," upon their vehicle

16

license plates.  430 U.S. at 717.  The Court specifically acknowledged that the New Hampshire law required individuals "to participate in the dissemination of an ideological message by displaying it on [] private property in a manner and for the express purpose that it may be observed and read by the public."  Id. at 713.  Because the First Amendment protects the right of individuals to hold a viewpoint different from the majority and to refuse to foster an idea they find objectionable, the plaintiffs in Wooley were protected by the First Amendment.  Id. at 715.

However, the Supreme Court made clear in Wooley that it did not intend that this analysis be read as sanctioning the obliteration of the national motto from United States coins and currency.  Id. at 717 n.15.  While the Court recognized that this issue was not before it, it distinguished its analysis of New Hampshire's requirement of placing the state motto on license plates from the placement of the national motto on currency.

> [C]urrency which is passed from hand to hand, differs in significant respects from an automobile, which is readily associated with its operator.  Currency is generally carried in a purse or pocket and need not be displayed to the public.  The bearer of currency is thus not required to publicly advertise the national motto.

Id.

Plaintiff's Free Exercise and RFRA claims arise from his assertion that the motto is blatantly religious.  Because the national motto has been held to be secular in nature, there is no proper allegation that the government compelled plaintiff to

affirm a repugnant belief in monotheism.[12] See Sherbert v. Verner, 374 U.S. 398, 402 (1963). Plaintiff has not sufficiently alleged that the government "penalized or discriminated" against him because of his religious views or that it "conditioned the availability of benefits upon [his] willingness to violate a cardinal principle of his religious faith." See Harper, 445 F.3d at 1188 (quoting Sherbert, 374 U.S. at 402, 406). Nor has plaintiff sufficiently alleged that the government lent "its power to one or the other side in controversies over religious authority or dogma, or punish[ed] the expression of religious doctrines it believes to be false." Id. (quoting Employment Div. Dep't of Human Res. of Oregon v. Smith, 494 U.S. 872, 877 (1990)). As such, plaintiff has not set forth a claim that the government's conduct in the continuing use of "In God We Trust" as the national motto and its inscription on coins and currency constitutes a substantial burden on the exercise of his religious beliefs. Accordingly, defendants' motions to dismiss plaintiff's Free Exercise and RFRA claims are GRANTED.

**CONCLUSION**

For the reasons stated above, defendants' motions to dismiss are GRANTED.

IT IS SO ORDERED.

DATED: June 12, 2006.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, JR.
United States District Judge

---

[12] Further, as the Supreme Court noted in Wooley, individuals are not personally associated with the currency they spend as they are with their automobiles. See id.